GEORGE T. DUNBAR, SPECIAL BAIL OF J. AND W. DUNBAR, vs. THOMAS CONWAY, SURVIVOR OF WILLIAM DRURY.— December 1839.

Under the act of 1828, ch. 161, it is the privilege of bail in Baltimore County Court, to surrender his principal, in his own discharge, at any time during the term, at which the fiat is finally entered; and this privilege extends to an adjourned term, although such term is held on the day at which the succeeding term is to commence.

A legitimate rule of court, prescribes a law to the court itself, to which it is required to conform; and any error of opinion, in respect either to its legal effect, or to its application to a particular case, will entitle the party injured to redress by appeal, provided the decision is final, and there is no other objection to the appeal.

APPEAL from *Baltimore* County Court.

On the 12th October 1837, the appellee sued out a writ of *scire facias*, reciting, that at a county court at, &c., on 1st September 1836, the appellant became bail, and pledge, &c., for *J. and W. Dunbar*, and that judgment was rendered against them on the 2nd January 1837, &c. At the return term of this writ, January 1838, the appellant appeared, and pleaded *nul tiel record.* The appellee replied there was such a record, on which issue was joined. The cause was then continued until May term 1838, when the appellant withdrew his plea, and confessed judgment, and a *fiat* was ordered by the court 2nd May 1838. At the following September term 1838, the appellant moved to be exonerated from his bail, the principal defendants being here in court, and the bail tendering costs.

The plaintiff admitted the facts, and annexed to his admission the following statement:

"In this case, a *scire facias* was issued against the bail to "last January term, and at May term a fiat was obtained, and "the plaintiffs counsel contends, that the principal can only "be surrendered in discharge of bail during the actual sittings "of the court at the May term."

The *county court* overruled the motion for an *exoneretur*.

The defendant *Dunbar*, then filed his exceptions to the overruling of his motion, and the following statement:

"The facts of the above cause are as follows: That a suit was brought by the plaintiff, against the defendants *James and William Dunbar*, to September term 1836, at which term the said *George T. Dunbar* came into court, and became the special bail of said defendants in said suit; that at January 1837, of said court, the plaintiff obtained judgment in said suit against the said *J. and W. Dunbar*, for $625.36; that in June 1837, a *ca. sa.* was issued on said judgment, returnable to September term, which at said term was returned by the sheriff, *non sunt.* The plaintiff then issued a *scire facias* against the said *George T. Dunbar*, the special bail, returnable to January term 1838, which was at said term returned, *made known*, and an appearance entered for the special bail, and at *May* term 1838, a *fiat nisi* was entered on said *scire facias*. That *Baltimore* county court at said term, adjourned on the 7th day of July; that on the first day of September, and before the said court, for the said term, was called after the calling of the *May* term, and when counsel were called upon to know if they had entries to make as of the May term, the counsel of the special bail brought the principals into court, and offered to surrender the principals in discharge of the bail, and moved to have the bail discharged, tendering the costs, to which motion the plaintiff's counsel objected, on the ground, that the offer and motion came too late."

It is agreed, that the following is a rule of *Baltimore* county court, regulating the practice of the city business.

4th. "The principal may be surrendered in discharge of his special bail, upon payment of costs, at any time during the term at which a *fiat* shall be finally entered, and whenever a *scire facias* is returned *scire faci*, or a second *scire facias* is returned *nihil*, there shall be a *fiat*, unless the defendant in such *scire facias* shall appear in person or by attorney during that term."

But the court (ARCHER, C. J., and PURVIANCE, A. J.,) being of opinion, that the uniform practice under said rule has been, that the bail may be discharged by surrender of his principal upon payment of costs, at any time during the sit-

ting of the court, to which the *scire facias* against the bail is returnable, and before the jury is discharged, and that the privilege was not considered as extending to an adjourned court, or to the day to which the term should be adjourned over, it being the constant practice, to adjourn the term over to the morning of the court in course, after the business of the term is finished—determined, that it was too late to offer to surrender said principal.

The defendant excepted, and brought the cause to this court by appeal.

The appeal was argued before BUCHANAN, C. J., STEPHEN, DORSEY, CHAMBERS, and SPENCE, J.

By GLENN and McMAHON for the appellants, and
By W. F. GILES for the appellee.

CHAMBERS, J., delivered the opinion of this court.

Prior to the act of 1828, ch. 161, the time at which a surrender of the principal could be made, so as to discharge the bail, was regulated by the rules of court in *Baltimore*, as it still is in the other county courts of the State. By the rule of the *Baltimore* court, the bail could only claim this privilege, at any time before the discharge of the jury at the term when the *sci. fa.* was returned *scire faci,* or the second *sci. fa.* returned *nihil.* Whatever might be the duration of the term, he could not surrender the principal after that period. Not because by the rule the term was considered as then at an end; but because the rule had selected this, as the proper period of the term, at which to limit the privilege.

In some of the courts, the *first* four days of the term was the limit. In others, the privilege extended during the continuous session, but not to an adjourned session of the same term, and in others not at such adjourned session, without the particular and special order of the court, after hearing the facts.

The law of 1828, was designed chiefly to expedite suits, and enable claimants to obtain more speedily, judgments against debtors. The result of the practice which it introduced, was to enable a plaintiff to obtain his judgment; sue out his *capias*

*ad satisfaciendum*, and obtain a return to his *scire facias*, against the bail, in five months, whereas by the former practice, it required two years. By the 10th section of the act, it is provided, that the bail shall have the privilege of surrendering the principal during the term at which the *fiat* may be entered; the rule of the *Baltimore* county court regulating city practice has been altered, and made strictly to conform to this act; and now allows the surrender "at any time during the term at which a *fiat* shall be finally entered." That the act of Assembly designed to extend the time for the advantage of the bail seems clear, from the provision which authorises the surrender at any time before a *fiat* entered, or even during the term after a *fiat*; whereas before the act, upon the return of the first writ, it being regularly served on the bail, if he appeared to the *scire facias*, he could claim no such privilege after the expiration of the period limited by the rules of court, although the judgment of *fiat* would not regularly be entered for two terms thereafter. So that in virtue of the act, the bail has in this particular predicament of his case, two terms beyond the period before allowed him, within which to produce his principal. The act of Assembly, and the rule of court, having each allowed the bail to bring in the principal at any time during the term, "it would seem only to be necessary to decide what is the term," and when does it end? It is not denied, nor indeed can it be, that for other purposes the term, e. g. the *May* term, continues until it is adjourned *sine die*. The adjournment of the court, *de die in diem*, no more makes the session appropriately the same term, than the adjournment for two days, for a week, or a month. The term may last until the next (e. g. the *September term*) commences, after which the court, if held, must be held as of the *September* term, because the act of Assembly so demands. Hence the necessity of the particular provisions in this act, that if a particular cause was yet in a course of trial, when the succeeding term was commenced, it might be finished *as if* the preceding term had continued.

The counsel for the appellee has relied on two grounds, to

make this an exception to the doctrine, which recognizes the last hour of an adjourned court as much a part of the term as the first.

The first ground is, that the act of 1828, which extended this indulgence to the bail by its terms, limited the last day, (and of course, as he rightly contends, the last hour of of that day,) to which the term could be extended. It would be difficult to avoid this conclusion, in the case he assumes.

If the law peremptorily requires that the term, say the *May* term, shall end on the last day of *August*, it could not be adjourned to the *first* day of *September*, and no act done on that day, could be considered as done within the legal period of the term. It is not necessary to decide how far this may have been the case, while the act of Assembly or that part of it was in force, which did in terms limit the period to which the session might be adjourned. It is now confessedly repealed, and the existing law by which the terms of the court are prescribed, does not designate any particular day at which the *May* term must end. It directs a day on which the next or *September* term shall commence; but it does not follow, that therefore the *May* term cannot be held at any earlier hour of the same day—on the contrary we are justified in saying, there is not a court in the State, in which the constant and uniform practice does not establish the directly opposite opinion. The next ground relied on, is the practice of the court of *Baltimore* under this rule, as stated in the exception. The constant practice of this court, will be found to conform in respect to the duration of the term, to all the other courts in the State, for in the exception, we find the following as part of the courts "opinion," "it being the constant practice to adjourn the *term over to the morning of the court in course.*" The court do assign as the reason of this opinion, their belief, that "the uniform practice, under their late rule has been, that the principal may be discharged by surrender of his bail, upon payment of costs, at any time during the sitting of the *court, to which the scire facias* against the bail *is returnable*, and *before the jury is discharged.*" This practice, as we have seen, will in a

particular case of frequent occurrence, limit the indulgence granted the bail by the express words, and as far as we can perceive, the clear intent of the act of 1828, so far as to require him to bring in the principal, two terms earlier than that act requires, and it professes to designate a particular portion of the term during which the principal shall not be surrendered; whereas, the very words of the act of Assembly, and of the rule of court are, that it may be done at any time during the term—and this, not because for the reason urged by the counsel, the excluded portion is not a part of the *term*, but because it is that part of the term occurring after the discharge of the jury. Doubtless the court said correctly, that the practice had been to bring in the principal before the jury was discharged, and it is well accounted for. The old rule required it, and had existed long enough to be generally known. The same practice though not necessary, was prudent under the new rule; and the court do not assert, that until this case they had ever before, since the act of 1828, refused to receive a surrender at any period of the term. We can only add, that if such appeared to be the case, we could not recognize such a practice under the circumstances of this case, as sufficient to repeal, as we think it would, to a great extent, the positive and plain provision of the act of Assembly.

The counsel for the appellee, without relying on the point, has suggested for consideration, whether on the authority of *Carroll vs. Barber*, 6 *Har. & John.* 154, an appeal will lie in this case. The distinction between the two cases is obvious. There the direction of the court below was appealed to, by a party who asked for an extension of the rule, not for its application—here the objection is, that the court refused to do an act, not depending on an admitted discretion, but required by the peremptory terms, as well of the act of Assembly, as of the rule of court. This court has always regarded a legitimate rule of court, as prescribing a law to the court. The proper office of such a rule, is to establish fixed and settled practice, to which the court is required to conform, and any error of opinion in respect either to its legal effect, or to its ap-

plication to a particular case, will entitle the party injured to redress by appeal, as for error in the construction or application of any rule of the statute or common law; it being of course implied, that the decision is final, and that no other objection could be taken, which would prevent an appeal in any case. *Vide* 1 *H. & J.* 524—6 *H. & J.* 272.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.